## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORDIA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| JAMES T. BUECHLER, on behalf of himself and all others similarly situated, | Civil Action No.: __ |
| Plaintiff | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| MANAGED CARE OF NORTH AMERICA, INC., d/b/a MCNA DENTAL, | |
| Defendant | |

## CLASS ACTION COMPLAINT

James T. Buechler ("Buechler" or "Plaintiff"), by and through his attorneys of record, upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, brings this class action complaint against defendant Managed Care of North America, Inc., d/b/a MCNA Dental ("MNCA" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.       Plaintiff brings this class action against Defendant MCNA for its failure to properly secure and safeguard Plaintiff's and Class Members' protected medical and health information, including, without limitation, "protected health information" or "PHI",[1] and "personally

---

[1] Protected Health Information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act. Inter alia, PHI includes test results, procedure descriptions, diagnoses, personal or family medical histories, and data points applied to a set of demographic information for a particular patient. PHI is inclusive of and incorporates personally identifiable information.

identifiable information" or "PII",[2] as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (collectively, PHI and PII are also referred to therein as "Private Information").

2.     MCNA is a dental benefits manager that describes itself as providing "services to state agencies and managed care organizations for their Medicaid, Children's Health Insurance Program (CHIP), and Medicare members" as well as providing dental plans for private employers, individuals, and families.[3] In the course of providing these services Defendant acquired and collected Plaintiff's and Class Members' PII and PHI to facilitate the healthcare-related services Plaintiff and Class Members requested or received.  Defendant knew, at all times material, that it was collecting, and responsible for the security of sensitive data, including Plaintiff's and Class Members' highly confidential PII and PHI.

3.     Plaintiff seeks to hold Defendant responsible for the harms it caused and will continue to cause Plaintiff and more than 8.9 million other similarly situated persons by virtue of a massive and preventable cyberattack that began no later than February 26, 2023, by which cybercriminals infiltrated the computer system on which the Private Information that Defendant was entrusted with and responsible for, was stored (the "Data Breach").  Plaintiff further seeks to hold Defendant responsible for not ensuring that the PII and PHI was maintained in a manner consistent with industry standards, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule (45 CFR, Parts 160 and 164(A) and (E)), the HIPAA Security Rule (45 CFR, Parts 160 and 164(A) and (C)), and other relevant standards.

---

[2] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

[3] https://www.mcna.net/en/company-overview last visited June 21, 2023.

4.      Defendant knew or should have known of the cyber-attack by no later than March 6, 2023.  Nonetheless, Defendant waited more than two and a half _ to inform victims of the Data Breach.  Indeed, Plaintiff and Class Members did not begin to receive notification letters from Defendant informing them of the Data Breach (the "Notice"), until commencing on or about May 26, 2023 and at various times thereafter.

5.      HIPAA establishes obligations for the protection of individuals' medical records and other personal health information. HIPAA, in general, applies to healthcare providers, health plans/insurers, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically, and sets requirements for Defendant's maintenance of Plaintiff's and Class Members' PII and PHI. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of patient health information and sets limits and conditions on the uses and disclosures that may be made of such information without express customer/patient authorization. HIPAA also gives a series of rights to patients over their PII and PHI, including rights to examine and obtain copies of their health records, and to request corrections thereto.

6.      Additionally, the so-called "HIPAA Security Rule" establishes national standards to protect individuals' electronic health information that is created, received, used, or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic PHI.

7.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Defendant assumed legal and equitable duties to those individuals. These duties arise from HIPAA and other state and federal statutes and regulations, as well as common law principles.  HIPAA provides the standard of procedure by which a medical provider must operate when collecting, storing, and maintaining PHI and imposes a duty on MCNA to maintain the confidentiality of such information.  Defendant is charged, *inter alia*, with legal violations predicated upon the duties set forth in HIPAA that underpin those violations and that were not honored, or were otherwise breached by MCNA.

8.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII and PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII and PHI of Plaintiff and Class Members were compromised and damaged through access by and disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future – and are entitled to damages.  In addition, Plaintiff and Class Members, who have a continuing interest in ensuring that their information is and remains safe, are entitled to injunctive and other equitable relief.

## PARTIES

**Plaintiff James T. Buechler**

9.    Plaintiff James T. Buechler is, and at all relevant times, was, a resident of Baltimore, Maryland. Plaintiff Buechler received dental insurance services through MCNA. On or about late May or early June, 2023, Plaintiff Buechler received a Notice of Data Breach from MCNA stating that his Private Information including, *inter alia*, his name, date of birth, address, phone number, email address, Social Security Number, driver's license number, health insurance information and information about his dental care, had been expropriated in the Data Breach. Following the Data Breach, Plaintiff Buechler's financial institution reissued his credit cards.

**Defendant Managed Care of North America, Inc., d/b/a MCNA Dental**

10.    Defendant MCNA is a Florida corporation headquartered in Fort Lauderdale, Florida. MCNA is the largest insurer for Medicaid and Childrens' Health Insurance Programs ("CHIP") in the United States, through which it provides insurance to approximately 5 million children and adults.[4] MCNA also provides dental insurance to businesses, individuals, and

---

[4] https://www.mcna.net/en/company-overview, last visited on June 21, 2023.

families. MCNA acquired, utilized and stored the PHI/PII of Plaintiff named herein and Class Members respecting whom Plaintiff seeks to represent.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Here, the Nationwide Class and the Maryland Classes include recipients of Defendant's Notice of Data Breach, which, upon information and belief, include non-Florida citizens.  Since Defendant is a Florida based entity headquartered in Fort Lauderdale, Florida, there is minimal diversity between at least one member of the Plaintiff's nationwide class and Defendant.

12.     This Court also has subject matter jurisdiction over this case pursuant to 28. U.S.C. § 1331 because several of the claims for relief herein are dependent or predicted upon violating duties imposed upon MCNA by federal law and regulation, including HIPAA, as more fully alleged below.

13.     This Court has general personal jurisdiction over Defendant because MCNA operates its principal place of business in Fort Lauderdale, Florida. Additionally, this Court also has specific personal jurisdiction over Defendant because it has minimum contacts with Florida, as it is located and conducts substantial business in or from Florida.

14.     This Court has supplemental jurisdiction over any claims not arising, in whole or in part, from violation of federal law.

15.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and because Defendant conducts a substantial part of its business within this District.

## FACTUAL BACKGROUND

**The Data Breach**

16.     On or about May 26, 2023, Defendant sent Plaintiff and other victims of the Data

Breach a Notice of Data Breach ("Notice Letter"), informing them that:

> **What Happened?**
> On March 6, 2023, MCNA became of certain activity in our computer system
> that happened without our permission. We quickly took steps to stop that
> activity. We began an internal investigation right away. A special team was
> hired to help us. We learned a cybercriminal was able to see and take copies of
> some information in our computer system between February 26, 2023 and
> March 7, 2023.

17.     Letters to victims of the Data Breach acknowledged various pieces of Private

Information were accessed in the data breach including, *inter alia*:

- Information used to contact you, like first and last name, address, date of
  birth, phone number, email
- Social Security Number
- Driver's license number/other government-issued ID number
- Health insurance (plan information, insurance company, member number,
  Medicaid-Medicare ID Numbers)
- Care for teeth or braces (visits, dentist name, doctor name, past care, x-
  rays/photos, medicines, and treatment)
- Bills and insurance claims

18.     The Notice Letter acknowledges that Defendant learned of the Data Breach on

March 6, 2023. However, despite learning of the Data Breach in early March 2023, Defendant did

not begin to inform impacted individuals after the Data Breach's occurrence, and the remedial

measures undertaken to ensure such a breach does not occur again, until on or around May 26,

2023. To date, Defendant has failed to disclose the root cause of the Data Breach, the

vulnerabilities exploited, and why it took more than two and a half months to inform Class

Members of the Data Breach, each of whom has a vested interest in ensuring that their Private

Information remains protected.

19.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any

degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without

these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

20.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, ultimately causing the exposure of Private Information.

21.     Upon information and belief, Defendant continues to maintain Plaintiff's PHI and PII, as well as that of all other Class Members.

**MCNA's Business and Obligation to Preserve and Protect Confidentiality and Privacy**

22.     MCNA is a Fort Lauderdale, Florida-based company providing dental insurance and related services.

23.     Plaintiff and Class Members are current or former clients of Defendant who obtained service(s) through Defendant.

24.     As a consequence of securing or receiving services from Defendant, Plaintiff and Class Members were required to provide sensitive and confidential Private Information, including their names, dates of birth, health information, insurance information, and other sensitive information.

25.     In its statement of "Our Privacy Practices" (the "Privacy Policy"), MCNA assures consumers that:

> One of our strengths is our ability to administer dental plans in an effective and innovative manner while safeguarding our members' protected health information. We are committed to complying with the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). We demonstrate our commitment through our actions.[5]

26.     In the Privacy Policy, MCNA acknowledges that:

> The law says MCNA has to keep your health information private. We have to give you this notice about our privacy practices, our legal duties and your rights. We must follow the privacy practices that are in this notice. If needed, we can change

---

[5]     https://www.mcna.net/en/privacy last visited on June 21, 2023.

the notice and the new one would apply to all health information we keep. If this happens, the new notice will be available upon request, posted on our website or we will send you a copy (electronically or through the mail). The changes must be within the law. The changes may apply to all of the old and new health information we have. Before we change our privacy practices, this notice will be changed.[6]

27.    In the Privacy Policy, MCNA further acknowledges that:

We are required by law to maintain the privacy and security of your protected health information. We will let you know promptly if a breach occurs that may have compromised the privacy or security of your information. We must follow the duties and privacy practices described in this notice and give you a copy of it. We will not use or share your information other than as described here unless you tell us we can in writing. If you tell us we can, you may change your mind at any time. Let us know in writing if you change your mind.[7]

28.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access. The information collected by Defendant included the Private Information of Plaintiff and Class Members.

29.    Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members, who value the confidentiality of their Private Information and demand security to safeguard their Private Information, took reasonable steps to maintain the confidentiality of their PII/PHI.

30.    At all times material, Defendant was under a duty to adopt and implement reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. And to that end, Defendant also has a legal duty created by FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiff and Class

---

[6]    *Id.*

[7]    *Id.*

Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

31.     Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. In addition, obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

32.     Plaintiff is informed and believes and thereupon alleges that in order to obtain services from Defendant, Plaintiff and Class Members were required to provide sensitive personal and private healthcare information, including the Private Information compromised in the Data Breach.

33.     By obtaining, collecting, using, Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties, and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

34.     Given the highly sensitive nature of the PII and PHI it possessed and the sensitivity of the medical and health services it provides, MCNA had a duty to safeguard, protect, and encrypt Plaintiff's and Class Members' PII and PHI.

35.     Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its medical services.

36.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

37.     Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

38.     Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

39.     Defendant was not permitted to disclose Plaintiff's and Class Members' Private Information for any reason that would apply in this situation.  The disclosure of Plaintiff's and Class Members' Private Information via the Data Breach was not permitted per Defendant's own Privacy Policy.

40.     Even though MCNA recognized that confidential and Private Information had been assessed and infiltrated between February 26 and March 7, 2023, it was not until on or about May 26, 2023, and at various times thereafter, months later, that Defendant began sending affected parties Notice Letters.

41.     Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), contract, industry standards, common law, and its own promises and representations made to Plaintiff and Class Members to keep their Private Information confidential and protect it from unauthorized access and disclosure.

42.     Plaintiff and Class Members had a reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep the Private Information they provided confidential and secure from unauthorized access and disclosure.

43.     Defendant failed to use reasonable security procedures and practices appropriate to safeguard the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, consequently enabling and causing the exposure of Private Information of approximately 8.9 million individuals.

44.     Because of Defendant's negligence and misconduct in failing to keep their information confidential, the unencrypted Private Information of Plaintiff and Class Members has

been expropriated by Unauthorized individuals who can now access the Private Information of Plaintiff and Class Members and use it as they please.

45.     Plaintiff and Class Members now face a real, present and substantially increased risk of fraud and identity theft and have lost the benefit of the bargain they made with Defendant when receiving services.

***Data Breaches Lead to Identity Theft and Cognizable Injuries.***

46.     The PII and PHI of consumers, such as Plaintiff and Class Members, is valuable and has been commoditized in recent years.

47.     Defendant was also aware of the significant repercussions that would result from its failure to do protect Private Information and knew, or should have known, the importance of safeguarding the Private Information entrusted to it and of the foreseeable consequences if its data security were breached.  Nonetheless, MCNA failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

48.     Identity theft associated with data breaches is particularly pernicious due to the fact that the information is made available, and has usefulness to identity thieves, for an extended period of time after it is stolen. As a result, victims suffer both immediate and long-lasting exposure and are susceptible to further injury over the passage of time.

49.     As a direct and proximate result of Defendant's conduct, Plaintiff and the other Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  They must now be vigilant and continuously review their credit reports for suspected incidents of identity theft, educate themselves about security freezes, fraud alerts, and take steps to protect themselves against identity theft, which will extend indefinitely into the future.

50.     Even absent any adverse use, consumers suffer injury from the simple fact that information associated with their financial accounts and identity has been stolen. When such sensitive information is stolen, accounts become less secure, and the information once used to sign up for bank accounts and other financial services is no longer as reliable as it had been before the

theft. Thus, consumers must spend time and money to re-secure their financial position and rebuild the good standing they once had in the financial community.

51.     Plaintiff and the other Class Members also suffer ascertainable losses in the form of opportunity costs and the time and costs reasonably incurred to remedy or mitigate the effects of the Data Breach, including:

A.     Monitoring compromised accounts for fraudulent charges;

B.     Canceling and reissuing credit and debit cards linked to the financial information in possession of Defendant;

C.     Purchasing credit monitoring and identity theft prevention;

D.     Addressing their inability to withdraw funds linked to compromised accounts;

E.     Taking trips to banks and waiting in line to obtain funds held in limited accounts;

F.     Taking trips to banks and waiting in line to verify their identities in order to restore access to the accounts;

G.     Placing freezes and alerts with credit reporting agencies;

H.     Spending time on the phone with or at financial institutions to dispute fraudulent charges;

I.     Contacting their financial institutions and closing or modifying financial accounts;

J.     Resetting automatic billing and payment instructions from compromised credit and debit cards to new cards;

K.     Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised accounts that had to be cancelled; and,

L.     Closely reviewing and monitoring financial accounts and credit reports for unauthorized activity for years to come.

52.     Moreover, Plaintiff and the other Class Members have an interest in ensuring that Defendant implement reasonable security measures and safeguards to maintain the integrity and confidentiality of the Private Information, including making sure that the storage of data or documents containing Private Information is not accessible by unauthorized persons, that access to such data is sufficiently protected, and that the Private Information remaining in the possession of Defendant is fully secure, remains secure, and is not subject to future theft.

53.     As a further direct and proximate result of Defendant's actions and inactions, Plaintiff and the other Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

54.     As a direct and proximate result of Defendant's wrongful actions or omissions here, resulting in the Data Breach and the unauthorized release and disclosure of Plaintiff's and other Class Members' Private Information, Plaintiff and all Class Members have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, *inter alia*, (i) the resulting increased and imminent risk of future ascertainable losses, economic damages and other actual injury and harm, (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other accounts—for which they are entitled to compensation; and (iii) emotional distress as a result of having their Private Information accessed and exfiltrated in the Data Breach.

**MCNA Was Well Aware of the Threat of Cyber Theft and Exfiltration in the Healthcare Industry**

55.     As a condition of its relationships with its customers, Plaintiff and Class Members, Defendant required that they entrust it with highly sensitive and confidential PII and PHI and financial information. Defendant, in turn, collected that information and assured consumers that it was acting to protect that PHI and PII pursuant to HIPAA and to prevent its disclosure.

56.     Plaintiff and Class Members were required to provide their PII and PHI and financial information with the reasonable expectation and mutual understanding that Defendant

would comply with its obligations to keep such information confidential and secure from unauthorized access and disclosure.

57.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and financial information. Plaintiff and Class Members relied on Defendant to keep their PII and PHI and financial information confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

58.     Defendant could have prevented the Data Breach by assuring that the Private Information at issue was properly secured.

59.     Defendant's overt negligence in safeguarding Plaintiff's and Class Members' PII and PHI is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.  Further, as an entity in the healthcare space, Defendant was on notice that companies in the healthcare industry are targets for data breaches.

60.     The healthcare industry in particular has experienced a large number of high-profile cyberattacks. Cyberattacks, generally, have become increasingly more common. More healthcare data breaches were reported in 2020 than in any other year, showing a 25% increase.[8] Additionally, according to the HIPAA Journal, the largest healthcare data breaches have been reported beginning in April 2021.[9]

61.     This trend continued in 2022, and healthcare breaches continue to increase in record numbers.[10] Thus, Defendant was on further notice regarding the increased risks of inadequate cybersecurity. In February 2022, the cybersecurity arm of the U.S. Department of Health and

---

[8] 2020 Healthcare Data Breach Report, https://www.hipaajournal.com/2020-healthcare-databreach-report-us/ last visited June 21, 2023.

[9] April 2021 Healthcare Data Breach Report, https://www.hipaajournal.com/april-2021-healthcare-data-breach-report/ last visited June 21, 2023.

[10] June 2022 Healthcare Data Breach Report, https://www.hipaajournal.com/june-2022-healthcare-data-breach-report/ last visited June 21, 2023.

Human Services ("HHS") issued a warning to hospitals and healthcare systems about a dramatic rise in cyberattacks, including ransomware attacks, urging facilities to shore up their cyber defenses.[11]   Indeed, HHS's cybersecurity arm has issued yet another warning about increased cyberattacks that urged vigilance with respect to data security.[12]

62.     In the context of data breaches, healthcare is "by far the most affected industry sector."[13]   Further, cybersecurity breaches in the healthcare industry are particularly devastating, given the frequency of such breaches and the fact that healthcare providers maintain highly sensitive and detailed PII.[14]

63.     A TENABLE study analyzing publicly disclosed healthcare sector breaches from January 2020 to February 2021 reported that "records were confirmed to have been exposed in nearly 93% of the breaches."[15]

64.     This is such a breach of cybersecurity where highly detailed PII and PHI records maintained and collected by a healthcare entity were accessed and/or acquired by a cybercriminal.

65.     Due to the high-profile nature of these breaches, and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in the healthcare industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large,

---

[11] Rebecca Pifer, Tenet says 'cybersecurity incident' disrupted hospital operations, HEALTHCAREDIVE (Apr. 26, 2022), https://www.healthcaredive.com/news/tenet-sayscybersecurity-incident-disrupted-hospital-operations/622692/ last visited June 21, 2023.

[12] Id. (HHS warned healthcare providers about the increased potential for attacks by a ransomware group called Hive, "[c]alling it one of the 'most active ransomware operators in the cybercriminal ecosystem,' the agency said reports have linked Hive to attacks on 355 companies within 100 days of its launch last June — nearly three a day.").

[13] Tenable Security Response Team, Healthcare Security, TENABLE (Mar. 10, 2021), https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid19-era-breaches last visited June 21, 2023.

[14] Id.

[15] Id.

sophisticated operation with the resources to put adequate data security protocols in place and assure the security of the data collected by it and entrusted to it by Plaintiff and Class Members.

66.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' PII and PHI from being compromised.

### Defendant's Conduct Violates Federal Law, Including the Rules and Regulations of HIPAA and HITECH

67.     Defendant has a statutory duty under HIPAA and other federal or state statutes to safeguard Plaintiff's and Class Members' data.

68.     Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data under the implied condition that Defendant and its participating entities would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

69.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendant left unguarded.   The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

70.     Defendant is a covered entity pursuant to HIPAA. See 45 C.F.R. § 160.102. Defendant must therefore comply with the HIPAA Privacy Rule and Security Rule. See 45 C.F.R. Part 160 and Part 164, Subparts A through E.

71.     Defendant is a covered entity pursuant to the Health Information Technology Act ("HITECH").[16] See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

---

[16] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

72.     Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

73.     HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

74.     HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

75.     HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

76.     "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

77.     HIPAA's Security Rule requires Defendant to do the following:

a) Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b) Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c) Protect Against reasonably anticipated uses or disclosures of such information that are not permitted; and

d) Ensure compliance by its workforce.

78.     HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of

electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

79.     Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

80.     Plaintiff's and Class Members' Personal and Medical Information, including their PII and PHI, is "protected health information" as defined by 45 CFR § 160.103.

81.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

82.     45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

83.     Plaintiff's and Class Members' personal and medical information, including their PII and PHI, is "unsecured protected health information" as defined by 45 CFR § 164.402.

84.     Plaintiff's and Class Members' unsecured protected health information has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

85.     Plaintiff's and Class Members' unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

86.     Plaintiff's and Class Members' unsecured protected health information that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

87.     Plaintiff's and Class Members' unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

88.     After receiving notice that they were victims of a data breach that required the filing of a Breach Report in accordance with 45 CFR § 164.408(a), it is reasonable for recipients of that notice, including Plaintiff and Class Members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

89.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

90.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

91.     This Data Breach is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

92.     The Data Breach could have been prevented if Defendant implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

93.     It can be inferred from the Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Representative Plaintiff's and Class Members' PII and PHI.

94.     Upon information and belief, Defendant's security failures include, but are not limited to:

a.    Failing to maintain an adequate data security system and safeguards to prevent data loss;

b.   Failing to mitigate the risks of a data breach and loss of data, including identifying internal and external risks of a security breach;

c.   Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

g.   Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

h.   Failing to protect against any reasonably-anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

j.   Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*; and

k.   Retaining information past a recognized purpose and not deleting it.

95.   Upon information and belief, prior to the Breach, Defendant was aware of its security failures but failed to correct them or to disclose them to the public, including Plaintiff and Class Members.

96.     The implementation of proper data security processes requires affirmative acts. Accordingly, Defendant knew or should have known that it did not make such actions and failed to implement adequate data security practices.

97.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

98.     Because Defendant has failed to comply with industry standards, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is necessary to ensure Defendant's approach to information security is adequate and appropriate. Defendant still maintains the PII and PHI of Plaintiff and Class Members; and without the supervision of the Court via injunctive relief, Representative Plaintiff's and Class Members' PII and PHI remains at risk of subsequent Data Breaches.

99.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII and PHI and financial information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII and PHI and financial information of Plaintiff and Class Members.

100.    Defendant owed a duty to Plaintiff and Class Members to ensure that the Private Information it collected and was responsible for was adequately secured and protected.

101.    Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII and PHI and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

102.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach that impacted the Private Information it collected and was responsible for in a timely manner.

103.     Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

104.     Defendant owed a duty to Plaintiff and Class Members to disclose if its data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

105.     Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

106.     Defendant owed a duty to Plaintiff and Class Members to mitigate the harm suffered by the Representative Plaintiff's and Class Members' as a result of the Data Breach.

### *Defendant Violated FTC Guidelines Prohibiting Unfair or Deceptive Acts*

107.     MCNA is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See e.g., FTC v. Wyndham Corp.*, 799 F.3d 236 (3d Cir. 2015).

108.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[17]

109.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no

---

[17] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited June 12, 2023).

longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[18]

110.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

111.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

112.    MCNA failed to properly implement basic data security practices. MCNA's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

113.    MCNA was at all times fully aware of its obligations to protect Plaintiff's and Class Members' Private Information because of its business model of collecting Private Information and storing such information. MCNA was also aware of the significant repercussions that would result from its failure to do so.

***Value of the Relevant Sensitive Information***

114.    While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, RX's, treatment plans) that is valuable to cyber criminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PII and PHI and financial information are valuable

---

[18] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited June 12, 2023).

commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on a number of underground internet websites. Unsurprisingly, the healthcare industry is at high risk for and acutely affected by cyberattacks.

115.   The high value of PII and PHI and financial information to criminals is further evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[20] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[21]

116.   Between 2005 and 2019, at least 249 million people were affected by health care data breaches.[22] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[23] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03% of overall health data breaches, according to cybersecurity firm Tenable.[24]

---

[19] Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-darkweb-how-much-it-costs/ last visited June 21, 2023.

[20] Here's how much it costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-darkweb-how-much-it-costs/ last visited June 21, 2023.

[21] In the Dark, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ last visited June 21, 2023.

[22] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133 last visited June 21, 2023.

[23] https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ last visited June 21, 2023.

[24] https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-incovid-19-era-breaches last visited June 21, 2023.

117.     These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

118.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

119.     Identity thieves can use PII and PHI and financial information, such as that of Representative Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

120.     The ramifications of Defendant's failure to keep secure Plaintiff's and Class Members' PII and PHI are long lasting and severe. Once PII and PHI and financial information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PII and PHI of Plaintiff and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII and PHI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

121.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

122.    The harm to Plaintiff and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical- related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[26]

123.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[27]

124.    If cyber criminals manage to access financial information, health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Plaintiff and Class Members.

---

[25] 47 Report to Congressional Requesters, GAO, at 29 (June 2007), available at: http://www.gao.gov/new.items/d07737.pdf last visited June 21, 2023.

[26] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, KAISER HEALTH NEWS (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/ last visited June 21, 2023.

[27] Id.

125.     A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[28]  Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[29]

126.     Data breaches are preventable.[30] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[31]  She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised."[32]

127.     Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[33]

---

[28] See Elinor Mills, Study: Medical Identity Theft is Costly for Victims, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ last visited June 21, 2023.

[29] Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, available at https://www.experian.com/blogs/ask-experian/healthcare-data-breachwhat-to-know-about-them-and-what-to-do-after-one/  last visited June 21, 2023.

[30] Lucy L. Thompson, Despite the Alarming Trends, Data Breaches Are Preventable, in DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)

[31] Lucy L. Thompson, Despite the Alarming Trends, Data Breaches Are Preventable, in DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012) at 17.

[32] *Id*. at 28.

[33] *Id.*

128.    The Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards and concomitant duties mandated and required by HIPAA regulations.

***Defendant's Delayed Response to the Breach***

129.    Time is of the essence when highly sensitive PII and PHI is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired PII and PHI of Plaintiff and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their PII and PHI, especially their Social Security numbers and sensitive medical information, onto the Dark Web. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing hundreds of thousands of Medicare numbers, Social Security numbers, Dates of birth, and other critical PHI and/or PII.

130.    Despite this understanding, Defendant did not begin informing affected individuals, including Plaintiff and Class Members, about the Data Breach until May 26, 2023.  The Notice Letter provided only scant details of the Data Breach and Defendant's recommended next steps.

131.    Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.8% of U.S.-based workers are compensated on an hourly basis, while the other 44.2% are salaried.[34]

132.    According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week;[35] leisure

---

[34] U.S. BUREAU OF LABOR STATISTICS, Characteristics of minimum wage workers, 2021, available at https://www.bls.gov/opub/reports/minimum-wage/2021/pdf/home.pdf, last visited June 19, 2023; *see also*, Bureau of Labor Statistics, https://www.bls.gov/news.release/empsit.t19.htm, last visited June 19, 2023 (finding that on average, private-sector workers make $1,146.99 per 40-hour work week).
[35] See https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time-james-wallman.html last visited June 19, 2023.

time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[36] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

133.    Plaintiff and Class Members are now deprived of the choice as to how to spend their valuable free hours and seek remuneration for the loss of valuable time as another element of damages.

## I.    CLASS ALLEGATIONS

134.    Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff asserts common law claims, as more fully alleged hereinafter, on behalf of the following Nationwide Class. In addition, Plaintiff Wanser asserts common law claims, as more fully alleged hereinafter on behalf of a New York Class, defined as follows:

> **Nationwide Class**: All residents of the United States whose PII or PHI was accessed or otherwise compromised as a result of the MCNA Data Breach.

> **Maryland Class**: All residents of the state of Maryland whose PII or PHI was accessed or otherwise compromised as a result of the MCNA Data Breach.

Members of the Nationwide Class and the Maryland Class are referred to herein collectively as "Class Members" or "Class."

135.    Excluded from the Class are Defendant, any entity in which Defendant have a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

136.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

---

[36] *Id.*

137.     **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time but MCNA provides services to millions of consumers throughout the United States.[37] MCNA has acknowledged that the number of individuals affected by the Data Breach was over 8.9 million persons, indicating that there are more than 8.9 million members of the Class, making joinder of each individual impracticable.[38]   Ultimately, members of the Class will be readily identified through Defendant's records.

138.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a)      Whether Defendant failed to adequately safeguard Plaintiff's and Class Members' PII and PHI;

b)      Whether Defendant failed to protect Plaintiff's and the Class Members' PII and PHI, as promised;

c)      Whether Defendant's computer system systems and data security practices used to protect Plaintiff's and the Class Members' PII and PHI violated HIPAA, federal, state and local laws, or Defendant's duties;

d)      Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and the Class Members' PII and PHI properly and/or as promised;

e)      Whether Defendant violated the consumer protection statutes, data breach notification statutes, state unfair practice statutes, state privacy statutes, and state medical privacy statutes, HIPAA, and/or FTC law or regulations, imposing duties upon Defendant, applicable to Plaintiff and Class

---

[37] https://www.mcna.net/en/company-overview last visited June 21, 2023.

[38] https://healthitsecurity.com/news/mcna-notifies-8.9m-individuals-of-healthcare-data-breach last visited June 21, 2023.

Members;

f)    Whether Defendant failed to notify Plaintiff and members of the Class about the MCNA Data Breach as soon as practical and without delay after the Data Breach was discovered;

g)    Whether Defendant acted negligently in failing to safeguard Plaintiff's and the Class Members' PII and PHI;

h)    Whether Defendant entered into contracts with Plaintiff and the Class Members that included contract terms requiring Defendant to protect the confidentiality of Plaintiff's PII and PHI and have reasonable security measures;

i)    Whether Defendant's conduct described herein constitutes a breach of their contracts with Plaintiff and each of the Class Members;

j)    Whether Defendant should retain the money paid by Plaintiff and each of the Class Members to protect their PII and PHI;

k)    Whether Plaintiff and the Class Members are entitled to damages as a result of Defendant's wrongful conduct;

l)    Whether Plaintiff and the Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

m)    What equitable relief is appropriate to redress Defendant's wrongful conduct; and

n)    What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Class Members.

139.    **Typicality**: Plaintiff's claims are typical of the claims of each of the Class Members. Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

140.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class

actions. Plaintiff has no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

141.    **Separateness**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, the Private Information collected by MCNA still exists, and is still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of the Defendant database.

142.    **Class-wide Applicability**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class, and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiff.

143.    **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues

presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff, the Nationwide Class, and the Maryland Class)**

144.    Plaintiff, on behalf of himself, the Nationwide Class, and the Maryland Class, re-alleges and incorporates by reference all preceding allegations in the paragraphs above as if fully set forth herein.

145.    Plaintiff and Class Members were required to submit PII and PHI to healthcare providers, including Defendant, in order to obtain insurance coverage and/or to receive healthcare services.

146.    Defendant knew, or should have known, of the risks and responsibilities inherent in collecting and storing the PII and PHI of Plaintiff and Class Members.

147.    As described above, Defendant owed a duty of care to Plaintiff and Class Members whose PII and PHI had been entrusted to Defendant.

148.    Defendant breached its duty to Plaintiff and Class Members by failing to secure their PII and PHI from unauthorized disclosure to third parties.

149.    Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' PII and PHI.

150.    A "special relationship" exists between Defendant and the Plaintiff and Class Members. Defendant entered into a "special relationship" with Plaintiff and Class Members because it collected and/or stored the PII and PHI of Plaintiff and the Class Members.

151.    But for Defendant's wrongful and negligent breach of its duty owed to Plaintiff and the Class Members, Plaintiff and the Class Members would not have been injured.

152.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duty.  Defendant knew or should have known it was

failing to meet its duty, and that Defendant's breach of such duties would cause Plaintiff and Class Members to experience the foreseeable harms associated with the unauthorized exposure of their PII and PHI.

153.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff, the Nationwide Class, and the Maryland Class)**

154.    Plaintiff, on behalf of himself, the Nationwide Class, and the Maryland Class, re-alleges and incorporates by reference all preceding allegations in the paragraphs above as if fully set forth herein.

155.    Pursuant to HIPAA (42 U.S.C. §1302d *et. seq.*), Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' PII and PHI.

156.    Defendant breached its duty to Plaintiff and Class Members under HIPAA (42 U.S.C. § 1302d *et. seq.*), by failing to implement reasonable safeguards to protect Plaintiff's and Class Members' PII and PHI from unauthorized access.

157.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

158.    But for Defendant's wrongful and negligent breach of its duty owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

159.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duty, and that Defendant's breach of that duty would cause Plaintiff and Class Members to experience the foreseeable harms associated with the unauthorized access to their PII and PHI.

160.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff, the Nationwide Class, and the Maryland Class)

161.    Plaintiff, on behalf of himself, the Nationwide Class, and the Maryland Class, re-alleges and incorporates by reference all preceding allegations in the paragraphs above as if fully set forth herein.

162.    Plaintiff and Class Members entered into valid, binding, and enforceable express or implied contracts with entities affiliated with or serviced by Defendant, as alleged above.

163.    The contracts respecting which Plaintiff and Class Members were intended beneficiaries were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the implied covenants that Defendant would act fairly and in good faith in carrying out its contractual obligations to take reasonable measures to protect Plaintiff's PII and PHI from unauthorized disclosure and to comply with state laws and regulations.

164.    A "special relationship" exists between Defendant and the Plaintiff and Class Members. Defendant entered into a "special relationship" with Plaintiff and Class Members who sought medical services from Defendant and, in doing so, entrusted Defendant, pursuant to its requirements and Privacy Notice, with their PII and PHI.

165.    Despite this special relationship with Plaintiff Defendant did not act in good faith and with fair dealing to protect Plaintiff's and Class Members' PII and PHI.

166.    Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant.

167.    Defendant's failure to act in good faith in complying with the contracts denied Plaintiff and Class Members the full benefit of their bargain, and instead they received healthcare

and related services that were less valuable than what they paid for and less valuable than their reasonable expectations.

168.     Accordingly, Plaintiff and Class Members have been injured as a result of Defendant's breach of the covenant of good faith and fair dealing respecting which they are express or implied beneficiaries, and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT IV**
**Breach of Duty**
**(On Behalf of Plaintiff, the Nationwide Class, and the Maryland Class)**

169.     Plaintiff, on behalf of himself, the Nationwide Class, and the Maryland Class, re-alleges and incorporates by reference all preceding allegations in the paragraphs above as if fully set forth herein.

170.     Defendant accepted the special confidence placed in its by Plaintiff and Class Members.  There was an understanding between the parties that the healthcare service provider Defendant would act for the benefit of Plaintiff and Class Members in preserving the confidentiality of their PII and PHI.

171.     Defendant became the guardian of Plaintiff's and Class Members' PII and PHI and accepted a fiduciary duty to act primarily for the benefit of its patients, including Plaintiff and the Class Members, including safeguarding Plaintiff's and the Class Members' PII and PHI.

172.     Defendant's fiduciary duty to act for the benefit of Plaintiff and Class Members pertains as well to matters within the scope of Defendant's medical relationship with its patients, in particular, to keep secure the PII and PHI of those patients.

173.     Defendant breached its fiduciary duty to Plaintiff and Class Members by (a) failing to protect their PII and PHI to Plaintiff and the Class; (b) by failing to notify Plaintiff and the Class Members of the unauthorized disclosure of the PII and PHI; and (c) by otherwise failing to safeguard Plaintiff's and the Class Members' PII and PHI.

174.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and/or Class Members have suffered and/or will suffer injury, including but not limited to: (a) the compromise of their PII and PHI; and (b) the diminished value of the services they received as a result of unauthorized exposing of Plaintiff's and Class Members' PII and PHI.

175.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT V**
**Breach of Implied Contract**

**(On Behalf of Plaintiff, the Nationwide Class, and the Maryland Class)**

176.    Plaintiff, on behalf of himself, the Nationwide Class, and the Maryland Class, re-alleges and incorporates by reference all preceding allegations in the paragraphs above as if fully set forth herein.

177.    Defendant collected and maintained responsibility for the Private Information of Plaintiff and the Class, including, *inter alia*, name, date of birth, address, Medicare identification number, health care subscriber identification number, and other PII in connection with the provision of services to Plaintiff and the Class.

178.    At the time Defendant acquired the PII of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and not take unjustified risks when storing the PII.

179.    Plaintiff and the Class would not have entrusted their PII to Defendant had they known that Defendant would fail to adequately safeguard their PII.

180.    Prior to the Data Breach, Defendant published the HIPAA Rights Notice, agreeing to protect and keep private financial information of Plaintiff and the Class.

181.   Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

182.   In collecting and maintaining responsibility for the maintenance and protection of the PII of Plaintiff and the Class and publishing the HIPAA Rights Notice, Defendant entered into contracts with Plaintiff and the Class requiring Defendant to protect and keep secure the PII of Plaintiff and the Class.

183.   Plaintiff and the Class fully performed their obligations under the contracts with Defendant.

184.   Defendant breached the contracts they made with Plaintiff and the Class by failing to protect and keep private financial information of Plaintiff and the Class.

185.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes, decreased credit

scores and ratings; lost work time; and other economic and non-economic harm.

186.   As a direct and proximate result of Defendant's breach of contract, Plaintiff are at an increased risk of identity theft or fraud.

187.   As a direct and proximate result of Defendant's breach of contract, Plaintiff are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the proposed Class, prays for relief and judgment against Defendant as follows:

A.   certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.   declaring that Defendant's conduct violates the laws referenced herein;

C.   finding in favor of Plaintiff and the Class on all counts asserted herein;

D.   awarding Plaintiff and the Class compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

E.   awarding Plaintiff and the Class appropriate relief, including actual, nominal and statutory damages;

F.   awarding Plaintiff and the Class punitive damages;

G.   awarding Plaintiff and the Class civil penalties;

H.   granting Plaintiff and the Class declaratory and equitable relief, including restitution and disgorgement;

I.   enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

J.   awarding Plaintiff and the Class the costs of prosecuting this action, including

expert witness fees;

      K.      awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowable by law;

      L.      awarding pre-judgment and post-judgment interest; and

      M.      granting any other relief as this Court may deem just and proper.

## II.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED:  June 22, 2023          Respectfully submitted,


                    *s/ John A. Yanchunis*

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
JOHN A. YANCHUNIS
JEAN S. MARTIN *(pro hac vice)*
FRANCESCA KESTER
201 N. Franklin Street, 7th Floor
Tampa, FL  33602
Telephone: 813/223-5505
jyanchunis@forthepeople.com
fkester@forthepeople.com
jeanmartin@forthepeople.com


**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER*
SAMUEL M. WARD*
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874
*sward@barrack.com*

**BARRACK, RODOS & BACINE**
ANDREW H. JEO*
JORDAN R. LAPORTA*
3300 Two Commerce Square
2001 Market Street

Philadelphia, PA 19103
Telephone: (215) 963-0600
Fascimile: (215) 963-0838
*ajeo@barrack.com*
*jlaporta@barrack.com*

**EMERSON FIRM, PLLC**
JOHN G. EMERSON*
2500 Wilcrest, Suite 300
Houston, TX 77042
Phone: 800-551-8649
Fax: 501-286-4659

*Counsel for Plaintiff*

*Pro Hac Vice* application to be filed